UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA

                                  **SENTENCING MEMORANDUM**
   -against-                                     08 Cr. 1144 (WHP**)**

ANTONIO MOREL,
                       Defendant

------------------------------------------------------X

## INTRODUCTION

     This memorandum is respectfully submitted on the matter of Antonio Morel's sentence. Mr. Morel plead guilty to conspiracy to violate the narcotics laws pursuant to plea agreement with the Government. According to the presentence report, Mr. Morel's guidelines are 78-87 months. Mr. Morel has spent three particularly difficult years in MCC due his poor health. In light of his minimal role and 3553(a) factors, including mandatory deportation, we hope to persuade the Court to grant Mr. Morel a sentence of time served.

                       **Pre-sentence Report**

     Mr. Morel and I have discussed the presentence report and wish to make the following objections and corrections.

       Page 2
       Citizenship: Mr. Morel is not an illegal alien.
       <u>Offense Conduct</u>
       <u>Page 7, paragraph 18</u>
     While others may have been involved in the instant conspiracy from April, 2008, Antoino Morel only became a knowing participant approximately one half-hour before the arrests on November 4, 2008.

       <u>Role Adjustment</u>
       <u>Page 7, paragraph 22</u>
     Antonio Morel should be granted a minimal role adjustment, with a four point reduction, rather than a two point minor role adjustment. Mr. Morel drove Arturo and Fernando Delgado to the Bronx the day before the arrest, believing that they were going to see the location where they would be doing a sheet-rocking job. Arturo and Delgado got out of the car and walked around the corner while Mr. Morel remained in the car. He did not know that they were involved in a drug

conspiracy. The next day, on November 4, 2008, Mr. Morel gave his brother Arturo and Delgado a ride to the same area, unaware that Arturo and Delgado were meeting a truck transporting cocaine. Arturo had told Mr. Morel that he needed to pick up tools for the sheet-rocking job. Mr. Morel believes that Arturo lied about the reason for the trip because Arturo knew that Mr. Morel would refuse to have anything to do with drugs. Mr. Morel only found out what was actually happening minutes before they met up with the truck. When Arturo told Mr. Morel that they had to meet a truck, Mr. Morel became suspicious and demanded to know what Arturo was actually doing. It was then that Arturo admitted that he and Delgado were meeting a truck carrying narcotics. Thereafter, instead of leaving Arturo stranded in the Bronx, Mr. Morel followed Arturo's instructions, leading the tractor trailer to the warehouse and then parking in the McDonald's parking lot. Mr. Morel was unaware of the type of drug or the quantity involved in this case. He admitted at his plea that as the drugs were transported in a tractor trailer, he assumed there was at least five kilos involved. He earned no money in the course of the conspiracy, and neither asked for nor expected to receive money for giving his brother a ride.

<u>Page 10, paragraph 41, last line</u>
Mr. Morel paid the fine.
<u>Page 11, paragraph 48</u>
Five of Mr. Morel's ten half siblings live in New York.
<u>Page 11, paragraph 51</u>
The sentence in Mr. Morel's Connecticut case, upon which the deportation order relied, has been amended. The result in that case no longer mandates deportation and a motion has been filed to vacate the warrant.
<u>Page 13, paragraph 57</u>
Mr. Morel and Viola Assuer we granted a divorce in the Dominican Republic.
<u>Page 16, paragraph 74</u>
The owner of the bodega, for whom Mr. Morel worked, was a close friend, not a relative.

## **Sentencing factors**

Factors to be considered in imposing sentence pursuant to 18 U.S.C. § 3553(a):

### **(a)(1) The Nature and Circumstances of the Offense**

Antonio Morel was a minimal participant who became involved in this case because his brother Arturo Morel asked him for a ride. As the eldest of fourteen

children who grew up poor, Antonio was accustomed to helping his brothers and sisters. At the time of the incident, Arturo had just returned from the Dominican Republic and was sleeping in a room over their brother's auto repair shop. Needing a ride to the Bronx and aware that Mr. Morel would not knowingly get involved in anything related to illegal drugs, Arturo lied to his brother. When Arturo told Mr. Morel that he had a prospective sheet-rock job, Mr. Morel was more than willing to assist him with a ride to the location.

Mr. Morel has met with the government and has qualified for the safety valve pursuant to 18 U.S.C. 3553(e) and § 5C1.2 of the Guidelines. During his proffer Mr. Morel explained that although he drove Arturo Morel, Fernando Delgado, and Pedro Ventura to the warehouse in the Bronx twice, his only knowing participation in the conspiracy began right before meeting the tractor trailer and guiding it to the warehouse.

At Arturo's request, Mr. Morel drove to the vicinity of the warehouse the day before their arrest. Having been directed where to go and where to park by Arturo, Mr. Morel and Pedro Ventura stayed in the car while Arturo and Fernando Delgado walked around the corner. At that time it was Mr. Morel's understanding that his brother and Fernando Delgado were going to look at the location of the job.

The next day Mr. Morel again acceded to Arturo's request and the four men returned to the area with Mr. Morel driving. On this occasion, Arturo told Mr. Morel that he had to pick up the tools for the job he had been hired to do at the location. When they arrived in the vicinity of the warehouse, Arturo had a phone conversation and then told Mr. Morel that they had to meet a truck. Suspicious at this point, Mr. Morel began to question Arturo. What does the truck have to do with getting tools? What is going on? After pressing Arturo, Mr. Morel was told that Arturo and Delgado were actually in the Bronx for a rendevous with a truck that was carrying narcotics.

Mr. Morel was furious with Arturo for involving him, but instead of abandoning his brother, he led the truck to the warehouse. Then he went to the MacDonald's parking lot, where all of th defendant's were arrested.

### The History and Characteristics of Antonio Morel

Antonio Morel is a sixty-four year old citizen of the Dominican Republic who came to the States legally more than forty years ago. He and his fourteen siblings

lived in very poor conditions and he arrived, the first in his family, in pursuit of a better life. During the time that he has lived here, Mr. Morel has worked and, apart from two minor brushes with the law, lived a law abiding life. As described in the letters written by his family and friends, Mr. Morel is the kind of person who is always available and willing to help others. (Attached at Exhibit A . Please note that unsigned letters are translations of original Spanish letters)

Mr. Morel has had a particularly difficult three years awaiting resolution of his case. As the Court is aware that there have been extensive delays in this matter due to unusual legal proceedings, an interlocutory appeal, as well as the unavailability of counsel. Initially, Mr. Morel was in the dorm at MDC but he was moved to MCC in anticipation of trial in March, 2009. When he first arrived at MCC, there were no beds available and Mr. Morel struggled with claustrophobia while confined in the Special Housing Unit. Relieved at being moved from SHU to the dorm rather than a unit with cells, Mr. Morel experienced some relief. However life in the dorm has also been difficult. It is overcrowded, with inadequate toilet facilities and as someone is always awake, noisy twenty-four hours a day. The close quarters breed stress and there is frequent tension, arguments and physical confrontations.

Although Mr. Morel's family was very poor and he has never had much money, his living conditions have always been clean. The inmates crowded onto the multiple bunks keep food on the unit and the dorm is filthy, infested with rodents and roaches. The odor of mouse urine and rodent droppings are everywhere. The mice have gotten so bold that they run over the inmates' beds. On more than one occasion, Mr. Morel has been awakened by a mouse on his blanket.

As described in the presentence report, Mr. Morel's health has deteriorated since he has been incarcerated. He has hypertension, high cholesterol, congestive heart failure, gastritis, an enlarged prostate, and edema. His feet and ankles are so swollen it is painful for him to walk, he often feels weak and short of breath. The high fat/carbohydrate diet, mandated by an insufficient food budget, and lack of exercise have undoubtedly contributed to Mr. Morel's poor health. He takes six medications for his illnesses.

Upon completing his sentence, Mr. Morel will be deported.. At the age of 64, in poor health, with little education and few skills, Mr. Morel faces a bleak future in the depressed economy of the Dominican Republic. He still speaks Spanish but, has been away from the country of his birth for more than forty years. All of Mr. Morel's

siblings are living in the United States.  There is no one in the Dominican Republic who can offer Mr. Morel a home or a means of supporting himself.  Mr. Morel's fate is a cruel reward for helping his brother Arturo, who was clearly more culpable than he.  Ironically, all of the far more culpable defendants have escaped punishment by absconding, while Mr. Morel faces 78-87 months.

The Court need not be reminded that the guidelines are advisory. They are not, as the Supreme Court has emphasized,  even presumptively reasonable. "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In *Rita* we said as much, in fairly explicit terms. . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. And in *Gall v. United States*, 552 U. S. __ (2007)**,** we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable."[1]

### CONCLUSION

In Mr. Morel's case, for all of the reasons described above, the guidelines are far from reasonable. The defense respectfully requests that the Court exercise  discretion and sentence Mr. Morel to time served.  Since he has been in jail more that three full years, such a sentence would be  " no longer than necessary" to accomplish the goals specified by statute.

Respectfully submitted,
/s/
Lisa Scolari,
20 Vesey Street- -Suite 400
N.Y., N.Y. 10007
212-227-8899
lscolarilaw@earthlink.net

cc:  Telemachus Kasulis

---

[1]  *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) quoting  *Rita,*  551 U. S. 338, at 351.(internal quotations omitted).